## HALL *v.* HALL.

44   293
67   101
68   412

A father may, by agreement with his minor child, relinquish to the child the right he has to his services and earnings.

After such an agreement the father may contract to employ and pay his child for his services, and he will be bound like a stranger.

But no such contract will be presumed. Evidence of an express contract will ordinarily be required.

ASSUMPSIT, for services rendered by Cynthia Hall, one of the plaintiffs, to her father, the defendant's intestate, in his family, from November, 1852, to March 21, 1857. The said Cynthia was of age March 4, 1857. On the 21st day of March, 1857, she married the said Isaac, and left her father's house. The defendant filed a confession of her claim from the time she became twenty-one years of age to said 21st of March, and pleaded the general issue as to the residue.

For the purposes of this case it was admitted that in January, 1852, the deceased gave the said Cynthia her time and future services, in writing, which writing was published in the Dover Gazette on the 17th day of January, and on the two following weeks; a copy of which is as follows:

### · TIME GIVEN.

This may certify that I have this day given to my daughter, Cynthia Hall, her time henceforth, and she is free to act and trade for herself. I shall not claim any of her earnings, nor pay any debts of her contracting after this date.

WILLIAM HALL.

Barrington, January 14, 1852.
Witness—JOHN T. GIBBS.

Soon after that time Cynthia left her father's, and was employed elsewhere, receiving her own earnings to her own use. Previous to November, 1852, while she was at work in another town for herself, the deceased requested her to come home and work in his family, and promised her, if she would do so, he would pay her as much as she could earn elsewhere. Whereupon she came home, and, with some intermissions, worked in her father's family till said 21st day of March.

Whether upon these facts the plaintiffs are entitled to recover for the services of said Cynthia, before she became twenty-one years of age, the parties agreed to submit to the determination of the court; and if the court shall be of opinion that the plaintiffs have no right to recover for last named services, judgment is to be rendered for the plaintiffs for the amount confessed, and for the defendant for his costs from the date of his confession. But if the court should adjudge otherwise, then this case is to be discharged, and the action stand for trial on said issue.

*T. E. Sawyer*, for the plaintiffs.

A father may claim the services of his children while they are under lawful age, and are supported by him; but he may relinquish that claim at any time; and when he does the profits of his children's labor belong to themselves. 2 Blackf. 449; Reeves Dom. Rel. (2d Ed.) 290. The parental authority ceases by the father's express or tacit consent to that effect. 2 Fraser on Per. and Dom. Rel., 29, 30. A father may give his infant son a part as well as the whole period of his minority. *Tillotson* v. *McCrillis*, 11 Vt. 477; *Chase* v. *Elkins*, 2 Vt. 290; *Chase* v. *Smith*, 3 Vt. 556. A father may emancipate his son, and relinquish his claim to his services; and when he does so the child will be entitled to the fruits of his own labor, until the father sees fit to resume his authority. *Regina* v. *Smith*, 16 E. L. & E. 221. If a father should give or sell his son his time, the law will imply an emancipation of the son, and will give him the benefits of such contracts as are made with him for his services. *Jenness* v. *Emerson*, 15 N. H. 489; *Nightingale* v. *Withington*, 15 Mass. 272, 275.

The contract of the intestate with the daughter, that if she would come home and work in his family, he would pay her as much as she could earn elsewhere, is a valid and binding contract, and the daughter can enforce it against the father, or his estate. In legal relation, as concerns this contract, he stands the same to his daughter as a stranger. *Jenney* v. *Alden*, 12 Mass. 377.

*C. W. Woodman*, for the defendant.

We do not controvert the doctrine that a parent may relinquish to the child his time, and the profits of his labor performed for others; but we maintain the right of the father to resume that time, and to demand the personal services of the child, thereafter, during minority. In the case cited by the plaintiff, *Regina* v. *Smith*, 16 E. L. & E. 221, such right of the parent is distinctly asserted.

The defendant represents the parent, and has the right to set up

any defense which the parent would have if the action had been against him; and he contends that the promise of the intestate to the plaintiff, Cynthia Hall, was without consideration, and that no action will lie upon it. By her return to his house, and laboring there, he got what belonged to him — what he had a right to claim. As against him she parted with nothing which she had a right to retain. To the father belong the earnings of the child during her minority, and upon him rests the duty of supporting her. Being bound to support her, he could resume control over her person and her services, at his pleasure, as against her. The gift of her time is voluntary, and, in view of the peculiar relations and duties of parent and child, must be construed only as a permissive indulgence, to continue so long as the father deemed it prudent and proper, but to cease whenever his own interest, or the interest of his child, should so require. The emancipation is solely for the protection of strangers, who employ and pay the child.

BELL, C. J. A father may, by agreement with his minor child, relinquish to the child the right he has to his services and earnings, and he will afterward have no right to claim his wages from his employers, but the child may claim and recover them in his own name for his own benefit. *Jenness* v. *Emerson*, 15 N. H. 489; *Jenney* v. *Alden*, 12 Mass. 375; *Withington* v. *Nightingale*, 15 Mass. 274; *Corey* v. *Corey*, 19 Pick. 30; *Wood* v. *Corcoran*, 1 Gray 405; *Chase* v. *Elkins*, 2 Vt. 290; *Chase* v. *Smith*, 5 Vt. 556; *Morse* v. *Welton*, 6 Conn. 547; *Whiting* v. *Earle*, 3 Rich. 201; *Stiles* v. *Granville*, 6 Cush. 158; *Jennison* v. *Graves*, 2 Blackf. 441; *Burlingame* v. *Burlingame*, 7 Cow. 92.

Such an agreement operates as a release of the father's right, and he has no power to reclaim, or resume it afterward; Preston Touchstone 307; Litt., sec. 467; nor will his right revive, unless, from the actual agreement of the minor, or one fairly inferable from the circumstances and conduct of the parties.

An agreement of the father with his son stands on different ground from his agreement with a third person, to give up to him the control of his child for a limited time, or during his minority. As between them the right of the father over his child has been held a personal trust, which can not be transferred, unless by indenture under the statute, and which it has been held the father may therefore resume at his pleasure; *Regina* v. *Smith*, 16 E. L. & E. 221; *People* v. *Merwin*, 3 Hill 399; *Mayne* v. *Baldwin*, 1 Halst. 454; *State* v. *Clover*, 1 Harr. 419; though upon this point the decisions do not all agree. *State* v. *Smith*, 6 Greenl. 462; *Pool* v. *Gott*, 14 Law Rep. 269; *Matter of Mitchell*, R. M. Charl. 489; *Commonwealth* v. *Gilkeson*, Hurd Hab. Corp. 543.

The agreement to sell or give to a child his time, and to relinquish to him all right to his services or earnings, affords no foundation for the usual concluding portion of the published notices, in which the father declares that he will pay no debts of the child's contracting. As a notice that the father has revoked all power of the son to contract on his account, it may be valid, and any person

who should contract with him, as an agent of his father, would do so at his peril, and the father generally would not be liable. But the duty imposed by law upon the father to maintain his minor child in case of his inability to maintain himself, rests on considerations of public policy, looking to the protection of the community, and it can not be renounced at his pleasure, nor the burden transferred to one who is not deemed in law generally competent to contract, nor capable of performing such a duty. *Pidgin* v. *Cram,* 2 N. H. 353; *Hillsborough* v. *Deering,* 4 N. H. 95; *Jenness* v. *Emerson,* 15 N. H. 488.

Under an agreement to give a son his time the father may contract to employ and pay him, or to hire him to labor for himself, and he will be equally bound as a stranger, and the son may recover his wages of him by a suit.

If, then, in the present case the father employed his daughter, to whom he had released his right to her services, and agreed to pay her wages for her labor, he and his estate are bound by the contract, and the daughter may well maintain her action.

The case then turns upon the question, whether there was an agreement between the deceased and his daughter that she should render her services, not as a daughter, but as a hired servant, and that she should be paid for her services as such, either wages at a certain rate, or a just and reasonable compensation, payable at all events; a question proper for the consideration of a jury.

Upon the statement made, we can not decide the case without determining these questions of fact, and in doing so we have to consider certain other legal principles.

The minor who is released from his father's service stands, as to his contracts for labor, either with strangers or with him, in the same position, as to this question of fact, as he would do if he had arrived at full age. *Steel* v. *Steel,* 12 Penn. St. 64.

Generally, where one man performs services for another, at his request, or with his knowledge, and without objection, the law implies a contract on the part of the person receiving the benefit of the service, to pay a reasonable compensation for it; 1 Pars. Con. 530; *Phillips* v. *Jones,* A. & E. 333; *James* v. *Bixby,* 11 Mass. 34; *Farmington Academy* v. *Allen,* 14 Mass. 172; *Guild* v. *Guild,* 15 Pick. 130; *Lamb* v. *Bunce,* 4 M. & S. 275; but this rule does not apply where it appears that the service was intended and understood to be gratuitous, or without expectation of payment. *Newell* v. *Keith,* 1 Vt. 214; *Bartholomew* v. *Jackson,* 20 Johns. 28; *Griffin* v. *Potter,* 14 Wend. 214; *Livingston* v. *Ackeston,* 5 Cow. 532.

Among the cases of the last description is the case of children of any age, residing with and making part of the family of their father. In such cases the presumption of law is that the services rendered on the one side, and the board and supplies furnished on the other, are gratuitous, and that payment for them is neither expected nor promised. This presumption may be met by direct proof of an express promise or agreement by the father to pay wages for the services of his son or daughter, or by the son or daughter to pay for their board, or such supplies as they receive,

but loose talk is hardly regarded as evidence of such an agreement, sufficient to rebut the legal presumption. There must be proof of a bargain, negotiated and concluded on both sides, and the mere assurance that the son shall be well used, or shall not be a loser, &c., is not regarded as evidence of such a contract.

The legal presumption may still be met by proof of such circumstances, connected with their dealings with each other, as fairly warrant the inference that it was the understanding and expectation of the parties on both sides that such services and supplies were to be paid for as a debt. *Fitch* v. *Peckham*, 16 Vt. 150 ; *Andrews* v. *Foster*, 17 Vt. 556 ; *Williams* v. *Hutchinson*, 5 Barb. 122 ; *Dyer* v. *Kerr*, 15 Barb. 444, and cases cited ; *Ridgeway* v. *English*, 2 N. J. 409 ; *Munger* v. *Munger*, 33 N. H. 581, and cases cited ; *Seavey* v. *Seavey*, 37 N. H. 133.

The case of *Davis* v. *Goodenow*, 27 Vt. 717, in its principal features bears a close resemblance to the present. The plaintiff was brought up in her grandfather's family. After she was of age, and had gone abroad to work for herself, she returned, at the defendant's request, upon the assurance she should be paid as well as she was then doing. This was often repeated during the three years she remained in the defendant's service, much as before she was of age. No reckoning of wages, or account on either part was ever had, or kept, nor was any claim made by the plaintiff for pay, or that any thing was due her, when she left, or when she needed money to get home, or when she was married, or when the defendant distributed his property ; and *Redfield*, J., says, Under this state of facts the case seems the ordinary one of a child, or other relative, living in the family of the parent, or one occupying that place, after they become of age, with the assurance that they shall be liberally compensated, without saying in what mode, and with no definite expectation that either the service or support will create a debt ; in which case it is well settled that neither can sustain an action against the other for any excess of real value of one above the other.

There were in that case several circumstances which doubtless had their weight in leading the court to this result, which this case does not show. Here nothing appears further than that the daughter, having a right to her time and earnings, and laboring abroad for her own benefit, was requested by her father to come home, and work in his family, and he promised her, if she would do so, he would pay her as much as she could earn elsewhere, and she did come home, and worked there, as charged. This evidence, standing alone and unexplained, seems to us an express contract, by which the father was bound, and upon which the daughter is entitled to recover. This point the parties have a right to try by jury, and for that purpose

*The case is discharged.*