James G. Cooney et al., Appellants, v. City of Belleville, Illinois, Appellee.

Heard in this court at the February term, 1941.　　Opinion filed October 27, 1941.

JOHNSON & JOHNSON and TURNER, HOLDER & ACKER-MANN, all of Belleville, and THEODORE A. KOLB, of Chicago, for appellants.

L. N. NICK PERRIN, JR., City Attorney, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an action at law, commenced in the circuit court of St. Clair county by James G. Cooney, sanitary and civil engineer of Belleville, and the copartnership of Consoer, Townsend and Quinlan, consulting engineers of Chicago, appellants (hereinafter designated as plaintiffs) against the City of Belleville, appellee (hereinafter designated as defendant).

The complaint filed consisted of two counts. The first count is based upon an agreement between plaintiffs and the City, date of June 20, 1938 for engineering services to be rendered by plaintiffs, in the construction of a sewage disposal plant, for defendant municipal corporation. That count recites that there was due plaintiffs the sum of $20,511.89, less a credit of payments advanced of $13,583.08, leaving a balance claimed to be due plaintiffs of $6,928.81. It was stipulated at the trial that plaintiffs should allow a $3,000 credit provided in the contract.

The second count recites that James G. Cooney was a resident engineer during the months of September, October, November and December 1940, at the rate of $350 a month and that there was due him the sum of $1,400. This is based upon a resolution alleged to have been passed by the city council of Belleville. The defendant by its answers denied substantially all the charges. Trial was before the court, without a jury.

The court, in a written opinion, found that plaintiffs had been overpaid by the City, and that the defendant was not indebted to plaintiffs or either of them, under either count of the complaint, and the judgment of the court was in favor of the defendant, from which judgment plaintiffs prosecute their appeal to this court.

Principal errors assigned are, failure of the trial court to find the issues for plaintiffs; the finding the issues for defendant; failure to find for plaintiff Cooney on count two; denying the motion to file an additional count, and in not ordering the issues of the trial limited in accordance with a resolution of the city council of Belleville.

The decision of this action insofar as the first count is concerned depends upon a construction of the contract between the parties litigant, paragraph "C" of the contract being decisive of the first count. Paragraph "C" of the contract provides as follows, "For and in consideration of the full and true performance of the engineering services involved in paragraphs "A" and "B," the Municipality agrees to pay the Engineers a sum equal to four per cent (4%) of the final cost of actual construction, based upon work actually done and materials used, payable three per cent (3%) as soon as funds are available for the construction of the project and the remaining one per cent (1%) in monthly installments as construction work progresses. Provided, However, that the sum of Three Thousand Dollars ($3,000.00) which has been paid to the Engineers shall be deducted from the fees allowed."

Plaintiffs contend that under the terms of the agreement they were entitled to 3 per cent of the estimated cost of the project as soon as the funds were available for the construction, regardless of services performed by them, and as matter of fact, if no services were performed by them at all, in and about the construction of the project. Defendant contends that 3 per cent of

the cost was not due plaintiffs until actual construction, based upon work actually done and materials used. Paragraph ''B'' of the contract in question recited that the municipality had then procured funds to construct the plant. According to plaintiffs their fee of 3 per cent was then immediately due and payable.

Although the contract is clear and unambiguous as to the amount of compensation to be paid for engineering services, that is, 4 per cent of the final cost of actual construction based upon work actually done and materials used, it is ambiguous as to when or in what amounts payments are to be made. The language used by the parties provides that 3 per cent shall be payable as soon as funds are available for the construction of the project and 1 per cent in monthly instalments, as construction work progresses. The question immediately arises as to what the 3 per cent refers to. It is obviously impossible, before the plant has been completed to determine what the final cost of actual construction will be and award plaintiffs 3 per cent of that amount. Plaintiffs contend that the 3 per cent refers to 3 per cent of the contract price. However, the language used by the parties does not in any way carry out this construction.

It is urged in this court, as it was argued in the trial court, that the construction placed upon the contract by the parties should be accepted by the court. However, so far as the first count is concerned we find nothing in the record of this case which would assist the court in arriving at the construction relied upon by plaintiffs. In one instance at least (The East Creek project) plaintiffs were paid even before any work was started, on the basis of 3 per cent of the estimated cost of the project, and there is no instance that we have been able to discover in the record, where a 3 per cent payment was made solely upon the basis of the contract price.

Counsel for plaintiffs in their argument say, that the payment provisions of paragraph (C) are in harmony with the well-established methods of payment followed in the construction industry. That therefore after engineers have made preliminary and then final plans, including shop drawings and detailed specifications, after all approvals of public bodies have been secured; after bids have been called for, proposals prepared and the contract has been let; if the money to pay them is in the treasury, the engineers should have three-fourths of their pay.

In the absence of specific agreement the law will presume that the parties contracted with reference to the general customs and usages of the business or profession involved. *Carroll, Schendorf & Boenicke, Inc. v. Simons*, 245 Ill. App. 586; *El Reno Wholesale Grocery Co. v. Stocking*, 293 Ill. 494, aff'g 215 Ill. App. 393; *Gilbert & Co. v. McGinnis*, 114 Ill. 28; *Mobile Fruit & Trading Co. v. Judy*, 91 Ill. App. 82; *Leavitt v. Kennicott*, 157 Ill. 235. A particular custom or general usage may be proved to vary the usual meaning of the language of the contract, or to import a term not expressed therein, but these are matters of which the courts are not required to take judicial notice. There is no evidence in this record of any such well-established usage or custom governing the structural engineering profession.

The fees of the engineers, as provided by the contract are not based upon the preparation of the plans and specifications of the project nor upon the estimated costs of the work and materials. The contract reads, under paragraph "C" that "the Municipality agrees to pay the Engineers a sum equal to four per cent (4%) of the final cost of actual construction, based upon work actually done and materials used, payable three per cent (3%) as soon as the funds are available for the construction of the project and the remaining one per cent (1%) in monthly installments as construc-

tion work progresses . . . ." We certainly do not understand that language to mean that the plaintiffs were entitled to an immediate payment of 3 per cent of the estimated cost of the project, immediately upon the signing of the contract by the parties to the suit, nor upon completion of the plans and specifications, merely because funds were available for the construction of the work, particularly, as stated above where there is no evidence of any general usage or custom, which would vary the terms of the written contract.

It is the opinion of the court that plaintiffs are not entitled to 3 per cent of the estimated cost of the project, but they are entitled to 4 per cent of the cost of the actual construction based upon work actually done and materials used. The only way that can be absolutely determined is when the contractor finally finishes his work and the job is accepted by the engineers and the City. We do not believe the court erred in finding for the defendant on the first count.

In the second count of the complaint, James G. Cooney, is the sole plaintiff, and in that count seeks to recover the sum of $350 a month for a period of four months for services rendered as resident engineer, based upon the alleged passage of a resolution of the city council of Belleville, date of August 21, 1939. While the original contract, which is relied upon, in count one, is expressly made a part of count two, counsel for plaintiff in his brief says, "Consequently no recovery is sought under count two, based upon this Engineering contract, but only on the council proceedings of August 21, 1939 and the subsequent carrying out of that agreement." The original contract provided that plaintiffs should furnish a resident engineer who should supervise the work during the construction at a salary of $350 a month. There seems to be some difference of opinion as to whether this meant that the resident engineer would be paid by the City or by those who were designated as engineers,

but inasmuch as Cooney's employment under this contract expired as of September 1, 1939, and the four months claimed are for September, October, November and December of 1939 and in light of the above statement of counsel, it would seem that it is not necessary to interpret this part of the contract.

However, the record does not disclose that this resolution of August 21, 1939 was ever formally passed by the city council. Exhibit B introduced by plaintiff, and admitted by the court which contains this alleged resolution, does show that the council did pass a motion to employ Cooney for the period not to exceed twelve months. The motion did not state for what purpose Cooney was to be employed or the amount of his compensation. After the hearing before the trial court, plaintiff Cooney made a motion to amend the complaint by the addition of an additional count, basing his claim for compensation for his services in that court upon the action of the city council in passing the motion. This apparently was predicated upon paragraph 170, subpar. 3 of the Civil Practice Act, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.046] providing that a pleading may be amended at any time, before or after judgment to conform the pleadings to the proofs. The trial court denied such motion, and this is urged as error in this court.

As has been stated above there was no provision in the motion passed by the city council for any specific sum, as the compensation to be paid plaintiff Cooney. There is no evidence in this record, as to whether or not $350 a month is a reasonable compensation for the work done by Cooney. It may well be that plaintiff Cooney has misconceived his remedy, and should have brought a suit based upon an implied contract, for the reasonable value of his services to the city as resident engineer for the four months in question. But the second count in the instant suit is based upon the express hiring, and an express contract. If the work was

in fact done under a special contract, the plaintiff cannot recover under a *quantum meruit*. The express promise excludes any implied promise raised by the law. *Miller v. Duntley,* 264 Ill. 268, 106 N. E. 198; *Ford v. McVay,* 55 Ill. 119; *Walker v. Brown,* 28 Ill. 378, 81 Am. Dec. 287; *Cast v. Roff,* 26 Ill. 452; *Brougham v. Paul,* 138 Ill. App. 455; *Brenzel v. Kirschner,* 128 Ill. App. 136; *Schiml v. Edgeworth,* 118 Ill. App. 332; *Ramming v. Caldwell,* 43 Ill. App. 175; *Ginders v. Ginders,* 21 Ill. App. 522; *Rollins v. Duffy,* 14 Ill. App. 69.

We do not feel constrained to hold that the court erred in not finding for the plaintiff on the second count, for as stated above, the resolution upon which it was predicated was not formally passed by the city council; nor are we prepared to say that there was error in overruling the motion to allow the filing of the third count. The court heard the evidence, it was for him to say whether that count conformed to the proofs.

It is contended in all seriousness by plaintiff's counsel that the court erred in denying the motion of the plaintiffs for the entry of an order giving effect to plaintiff's exhibit 2, and in not ordering the issues of the trial limited in accordance with the resolution adopted by the city council of Belleville. By that resolution the city attorney was directed to withdraw all pleading in the case, so that the only issue to be decided by the court (so the resolution recited) was whether the monthly payment to Mr. Cooney of $350 a month was to be paid out of the 4 per cent of the final cost of construction as provided in the contract between the City and Mr. Cooney and his associates, or if the City is indebted to Mr. Cooney at the rate of $350 a month in addition to the 4 per cent of the cost of actual construction.

Courts are ordinarily not concerned with private arrangements between attorney and client, nor with

instructions given attorneys by their clients, whether the client is an individual or corporation. If upon the trial of this case the city attorney, representing the defendant municipal corporation had advised the court that his client the City of Belleville had instructed him to withdraw his answer and to permit a default judgment, we question not, but what that would have been permitted by the trial court. But it certainly is not the law, that the city council of a municipal corporation, involved in litigation in the courts of this State, can by resolution control the making up of the issues to be tried by the court, and direct or even suggest to the courts what questions are to be decided in contested litigation. The trial court did not err in totally disregarding this resolution.

It was the judgment of the trial court, that all of the plaintiffs were not entitled to recover under the first count and that plaintiff Cooney was not entitled to recover under the second count. We are not inclined under the evidence in this case, and the pleadings, to disturb that finding. Findings of the court, in trials without a jury are entitled to the same weight as a jury verdict and will not be set aside unless manifestly against the weight of the evidence. *Shapleigh Hardware Co. v. Enterprise Foundry Co.*, 305 Ill. App. 180, 27 N. E. (2d) 1012.

While we have not recited all the facts shown by the evidence we have carefully considered the same and are of the opinion that the finding and judgment of the trial court was not contrary to the manifest weight of the evidence, and that no reversible error appears in the record. We may not in this opinion entirely agree with some of the reasoning of the learned trial court, as expressed in his written opinion, in arriving at his conclusions, but we do believe that his ultimate conclusions were correct. The judgment of the circuit court of St. Clair county will therefore be affirmed.

*Affirmed.*